# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2012-NMSC-016

Filing Date: May 24, 2012

Docket No. 32,291

STATE OF NEW MEXICO,

      Plaintiff-Respondent,

v.

LAYBE TORRES,

      Defendant-Petitioner.

## ORIGINAL PROCEEDING ON CERTIORARI
Stephen D. Pfeffer, District Judge

Jacqueline L. Cooper, Chief Public Defender
Kimberly M. Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Martha Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**SERNA, Justice.**

**{1}** Laybe Torres (Defendant) was convicted by a jury of Driving While Intoxicated (seventh or subsequent offense).  While Defendant was initially pulled over for not wearing a seatbelt during a routine seatbelt enforcement operation, the arresting officer subsequently initiated a DWI investigation after smelling alcohol, observing Defendant's bloodshot eyes, and noting Defendant's slurred speech.

**{2}** In his rebuttal closing, the prosecutor told the jury that defense counsel had lied

1

when commenting on the absence of a seatbelt citation during his closing argument, implying that a citation did in fact exist.  The prosecutor also waved around what appeared to be a copy of the seatbelt violation, which had not been introduced into evidence, in front of the jury while accusing defense counsel of lying.  Defense counsel promptly moved for mistrial, and the trial court, after excusing the jury from the courtroom and discussing the issue with counsel, instructed the jury to "disregard the statement of the prosecution as to opposing counsel lying."

**{3}**     Defendant appealed his conviction to the Court of Appeals, which affirmed the trial court in a memorandum opinion.  *State v. Torres*, No. 29,603, mem. op. (N.M. Ct. App. Mar. 2, 2010).  While we agree with the Court of Appeals' ultimate conclusion that a new trial is not warranted, we nonetheless must address the prosecutor's unprofessional behavior during closing arguments.  *See* NMSA 1978, § 36-2-1 (1941) (codifying the Supreme Court's authority to define and regulate the practice of law); *see also Bell v. State*, 723 So. 2d 896, 897 (Fla. Dist. Ct. App. 1998) (clarifying that the court's decision to affirm the defendant's convictions "should not be construed as approval of the remarks made by the prosecutor.").  While we  would disapprove of such conduct by any practicing attorney during any trial, we find the prosecutor's behavior in this case especially troubling.  A prosecutor "represents the public interest" and must ensure above all else that a criminal defendant receives a fair trial.  *State v. Gonzales*, 2005-NMSC-025, ¶ 36, 138 N.M. 271, 119 P.3d 151; *see also State v. Cooper*, 2000-NMCA-041, ¶ 15, 129 N.M. 172, 3 P.3d 149.  Referring to opposing counsel as a liar, or attempting to corroborate such insults by relying on information not admitted into evidence erodes that interest, undercuts public confidence in the legal profession, and unnecessarily raises the risk of a mistrial.

## I.     BACKGROUND

**{4}**     At trial, the State presented testimony regarding the sobriety testing, the drawing and testing of Defendant's blood, and the blood test results in order to support the DWI charge.  Although defense counsel challenged the accuracy and reliability of the blood test results,[1] the jury heard a considerable amount of testimony from the medical assistant and forensic toxicologist who drew and tested Defendant's blood, as well as testimony concerning the protocol followed in the present case and blood drawing and testing protocol generally.

**{5}**     During defense counsel's closing argument, he noted the fact that the State presented no evidence regarding the underlying seatbelt violation—the reason for which Defendant was initially stopped.  Defense counsel asked the jury to

---

[1]     When Defendant's blood was drawn, two samples were placed into vials for testing.  When the forensic toxicologist received the blood kit, one vial was labeled properly and the other labeled as "Labe [sic] Garcia."  Notably, Garcia is the last name of the officer who arrested Defendant and transported him to the hospital for the blood testing.

[l]ook at the situation. If you get pulled over by an officer because you're not wearing your seatbelt, he may arrest you for something else later. And that's his whole purpose of being out there that day is to make sure you're wearing your seatbelt. Don't you think maybe you'd want to ask yourself why we're not here on the seatbelt, too? It's a little odd. Maybe there's something else going on in this case, I don't know. It doesn't seem right. . . . But there's just something not right with that.

Without any objection from the State, defense counsel finished his closing argument. Immediately after beginning his rebuttal closing, however, the prosecutor informed the jury that defense counsel had lied regarding the seatbelt citation comments, while simultaneously waving a copy of the seatbelt violation around in front of the jury. Defense counsel alleges to never have seen the citation and it had not been introduced into evidence during the trial. Although the parties dispute the actual wording the prosecutor employed in attacking defense counsel's honesty during his rebuttal,[2] we find implicit in the conversation between the trial court and counsel during the bench conference after defense counsel's objection and motion for mistrial a finding by the district court that the prosecutor in fact told the jury that defense counsel had lied:[3]

> COURT: Okay. I heard him say regarding the seatbelt charge and you said?
>
> [PROSECUTOR]: He lied about the seatbelt.
> . . .
> COURT: [W]hat I heard was [the prosecutor] saying, "Regarding the seatbelt charge" and then I heard you yelling, "Objection, move for a mistrial." What
>      else did I miss, if I missed anything?
>
> [DEFENSE COUNSEL]: Oh, that I lied to the jury.
> . . .
> COURT: Okay. So the statement made by [the prosecutor] is that regarding the seatbelt charge, [defense counsel] lied to the jury . . . .

---

[2] Defendant argues that the trial transcript is not accurate because the prosecutor's comments were interrupted by defense counsel's motion for mistrial, and that "there was a flurry of activity all at once, such that the court itself had not heard all that happened." The State responds that the trial transcript accurately omits the prosecutor's reference to defense counsel as a liar during closing rebuttal argument because that statement was only made during the bench conference after the jury had been removed from the courtroom.

[3] The actual names of counsel have been removed and replaced with the more general terms used throughout the Opinion.

[PROSECUTOR]: Yeah. I'm going to say that I don't know how we want to handle this.

**{6}** After establishing what had actually been said in front of the jury, the trial court reflected on the way the prosecutor handled the situation, advising the prosecutor to "[h]esitate before you use words like liar. That's basic professionalism and ethics." The court asked why, if the prosecutor believed defense counsel's statements to be problematic, rather than making an objection he decided to tell the jury he was lying, further noting that:

> You waited until you[r] reply thinking that you could bring up evidence that was not before this Court. So that's a big problem. That should—there needs to be something in you that makes you stop. And then when you say it so quickly to just say . . . he's a liar, that really—I don't know what television shows you're watching about attorneys, but I don't want to hear "liar" in my courtroom. That should be something that makes you hesitate.

After hearing arguments by both parties on the appropriate way to proceed, including argument in support of defense counsel's motion for mistrial, the trial court determined the seatbelt citation issue to be peripheral to the DWI trial and decided to instruct the jury to disregard the prosecutor's statement. After retiring for deliberation, the jury returned a guilty verdict in roughly twenty minutes.

## II.   DISCUSSION

### A.   The trial court did not abuse its discretion in denying Defendant's motion for mistrial.

**{7}** Before addressing the issue of attorney professionalism that this case presents, we briefly discuss why the prosecutor's actions, while entirely improper, did not deprive Defendant of a fair trial. "Only in the most exceptional circumstances should we, with the limited perspective of a written record, determine that all the safeguards at the trial level have failed. Only in such circumstances should we reverse the verdict of a jury and the judgment of a trial court." *State v. Sosa*, 2009-NMSC-056, ¶ 25, 147 N.M. 351, 223 P.3d 348. The trial court abuses its discretion in ruling on a motion for mistrial if in doing so it "acted in an obviously erroneous, arbitrary, or unwarranted manner." *State v. Fry*, 2006-NMSC-001, ¶ 50, 138 N.M. 700, 126 P.3d 516 (quoting *State v. Stills*, 1998-NMSC-009, ¶ 33, 125 N.M. 66, 957 P.2d 51).

**{8}** In reviewing the trial court's ruling, we view the comment at issue "in context with the closing argument as a whole and in the context of the remaining trial proceedings so that we may gain a full understanding of the comments and their potential effect on the jury." *Fry*, 2006-NMSC-001, ¶ 50 (quoting *State v. Armendarez*, 113 N.M. 335, 338, 825 P.2d 1245, 1248 (1992) (internal quotation marks omitted)). This Court has in the past acknowledged that

4

[c]oming at the end of trial, and often after jury instructions, [closing argument] is the last thing the jury hears before retiring to deliberate, and therefore has considerable potential to influence how the jury weighs the evidence. At the same time, closing argument, and rebuttal argument in particular, is necessarily responsive and extemporaneous, not always capable of the precision that goes into prepared remarks.

*Sosa*, 2009-NMSC-056, ¶ 24. When remarks made during closing argument offset this delicate balance, the trial court may choose to strike statements and offer curative instructions. *Id.* ¶ 25. Alternatively, "should all the preceding safeguards fail, the trial court retains the power to declare a mistrial." *Id.* Because the trial court is better able to gauge the magnitude of objectionable comments, we afford it broad discretion in choosing the appropriate way to respond. *See id.*

**{9}** As discussed more thoroughly below, we view both the prosecutor's reference to information outside of evidence and his labeling of defense counsel as dishonest as unacceptable. We hold, however, that the trial court did not err in choosing to deny the motion and to instead downplay the prosecutor's actions through a simple curative instruction to the jury. *Cf. State v. Taylor*, 104 N.M. 88, 95, 717 P.2d 64, 71 (Ct. App. 1986) (holding that although certain comments made by the prosecutor were likely improper, the trial court acted appropriately in denying the motion for mistrial).

**{10}** In *State v. Sosa*, this Court articulated three factors to consider when reviewing questionable statements made during closing arguments for reversible error: "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement [was] isolated and brief, or repeated and pervasive; and (3) whether the statement [was] invited by the defense." 2009-NMSC-056, ¶ 26. We emphasized in *Sosa* that these factors are only meant to be "useful guides" and that context is paramount. *Id.* ¶ 34. When these considerations lead to a conclusion that the comments "materially altered the trial or likely confused the jury by distorting the evidence," the State has deprived the defendant of a fair trial, and reversal is warranted. *Id.*

**{11}** In first reviewing the prosecutor's actions, and then considering them in the context of the rest of closing argument and the trial as a whole, we are not persuaded that Defendant was deprived of a fair trial. Looking to the first *Sosa* factor, the prosecutor's actions did not rise to the level of prosecutorial misconduct resulting in the deprivation of Defendant's constitutional right to a fair trial. In *State v. Breit*, for example, a prosecutor's misconduct was so "pervasive and outrageous" that it was held to violate the defendant's right to a fair trial.[4] 1996-NMSC-067, ¶ 3, 122 N.M. 655, 930 P.2d 792. The misconduct in *Breit* was so

---

[4]In *Breit*, the defendant was retried due to the extreme prosecutorial misconduct in his first trial. 1996-NMSC-067, ¶ 1. The cited opinion, which discusses in detail the misconduct during the first trial, held that double jeopardy should have barred the

"unrelenting," *id.* ¶ 45, that "had the defense counsel objected at every opportunity, he would have been placed 'in the untenable position of appearing to hamper the proceedings and hide evidence from the jury,'" *id.* ¶ 42 (quoting *State v. Breit*, No. CR-88-175, slip op. at 6 (N.M. Dist. Ct. Aug. 2, 1990) (Grisham, J.)).

**{12}** Nor did the prosecutor's remarks in the present case constitute improper commentary on Defendant's other constitutional rights, such as the right against self-incrimination or the right to remain silent. *See, e.g.*, *State v. Allen*, 2000-NMSC-002, ¶ 27, 128 N.M. 482, 994 P.2d 728 (noting that a prosecutor's comments regarding a defendant's constitutional right to remain silent may constitute reversible error); *see also Garcia v. State*, 103 N.M. 713, 714, 712 P.2d 1375, 1376 (1986) (holding that improper commenting on the defendant's right to refuse a warrantless automobile search constituted reversible error). Importantly, as the trial court noted, the references to the existence of a seatbelt citation did not touch on the elements the jury was required to find in order to convict Defendant of Driving While Intoxicated. *See generally State v. Garvin*, 2005-NMCA-107, ¶¶ 15-21, 138 N.M. 164, 117 P.3d 970 (discussing a prosecutor's misstatements in front of the jury regarding the elements of the crime for which the defendant was on trial and the subsequent prejudicial effect such comments could have on a jury verdict).

**{13}** Further, the prosecutor's personal attack was directed toward Defendant's attorney and not Defendant himself. Although the jury's perception of counsel's honesty and professionalism certainly has the potential to play a role in whether or not the jury ultimately finds evidence elicited by counsel to be credible, the prosecutor's comment here is not equivalent to commenting on the credibility or character of a witness, or questioning the veracity of Defendant himself. *See, e.g.*, *State v. Pennington*, 115 N.M. 372, 380-81, 851 P.2d 494, 502-03 (Ct. App. 1993) (prosecutor discussing his own ethical obligations and then assuring the jury that a witness was not lying created the risk of reversible error).

**{14}** Looking to the second *Sosa* factor, Defendant himself described the prosecutor's actions during rebuttal closing in his briefing as a "flurry of activity all at once." *But cf. State v. Duffy*, 1998-NMSC-014, ¶ 48, 126 N.M. 132, 967 P.2d 807 ("A single instance of prosecutorial misconduct may be so egregious that it may, standing alone . . . warrant a new trial."), *overruled in part on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n. 6, __ N.M. __, __ P.3d __. Defendant asserts that this "flurry of activity" during closing arguments was representative of an entire trial marked by blatant misconduct, and although perhaps the prosecutor acted somewhat arrogantly in certain communications between opposing counsel and the judge outside of the jury's presence, Defendant's other allegations of misconduct sound more in the prosecutor's deficient understanding of basic evidentiary

---

defendant's retrial and reversed his convictions. *Id.* ¶¶ 7, 49.

rules.[5]

**{15}** Finally, looking to the third *Sosa* factor, given defense counsel's failure to elicit testimony that established or even suggested the absence of a seatbelt citation prior to closing arguments, he should have reasonably anticipated an objection or other response to his remarks. We do not conclude, however, that defense counsel invited an accusation of lying to the jury. After defense counsel objected, the trial court took swift action in excusing the jury from the courtroom, clarifying what had been said, hearing argument from both parties, concluding that the issues were peripheral to the evidence presented during trial, and playing down the prosecutor's actions through a curative instruction. Although a more effective instruction might also have included a statement regarding the irrelevance of the seatbelt violation to the elements of Driving While Intoxicated, the instruction given was a sufficient response to the situation. In light of the trial court's proper determination that the seatbelt citation was peripheral, we do not believe the prosecutor's actions stood to affect the jury's view of the relevant evidence presented. The prosecutor's inappropriate conduct, therefore, does not constitute reversible error.

**B.**     **The prosecutor's behavior created an unnecessary risk to Defendant's right to the fair and impartial administration of justice.**

**{16}** This Court aims to regulate attorney conduct using case law and the rules of professional conduct as guides. *See* § 36-2-1 (recognizing the authority of the Supreme Court to regulate the practice of law). *See generally United States v. Young*, 470 U.S. 1, 7-8 (1985). We acknowledge that our discussion of the issues of professionalism raised by these facts is ultimately not dispositive of this appeal. While it should be readily apparent to members of the Bar that such conduct is unacceptable, in order to minimize the likelihood of similar future conduct, we take the opportunity to highlight some specific reasons *why* the prosecutor's behavior was improper and which rules proscribe such behavior. Although the facts of this case concern prosecutorial misconduct, and we discuss here the reasons why inappropriate prosecutorial commentary raises concerns above and beyond improper attorney commentary generally, we emphasize that in all cases, "counsel on both sides of the table share a duty to confine arguments to the jury within proper bounds." *Id.* at 8. Without doubt, "[d]efense counsel, like his adversary, must not be permitted to make unfounded and inflammatory attacks on the opposing advocate." *Id.* at 9; *see also id.* at n. 6.

**{17}** An analysis of alleged misconduct by a prosecutor triggers special considerations. Almost eighty years ago, the United States Supreme Court in an oft-cited case cautioned that a prosecutor is not simply acting as counsel for one of two parties in a dispute; he is acting

---

[5] Defendant argues that the prosecutor repeatedly made conclusory statements of opinion and asserted them as statements of established fact. It is clear from the trial transcript that the court viewed the occasional misstep as a lack of understanding of how to properly frame certain questions rather than deliberate misconduct.

7

on behalf "of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *Berger v. United States*, 295 U.S. 78, 88 (1935). While a prosecutor is allowed to "strike hard blows, he is not at liberty to strike foul ones." *Id. Berger* also advised that due to the inherent confidence an average jury will likely have in an agent of the government, "improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Id.* Unlike the present case, the misconduct in *Berger* "was pronounced and persistent," leaving the Court with no choice but to regard the misconduct as consequential enough to warrant a new trial. *Id* at 89.[6] The principles articulated in *Berger*, however, are as valuable to allegations of lesser prosecutorial misconduct as they are to reversible conduct.

**{18}** Our own judiciary, along with others throughout the nation, has at many times and in many different ways "urge[d] prosecutors to adhere carefully to the trial judge's efforts to control argument during trial." *State v. Cooper*, 2000-NMCA-041, ¶ 16; *see also Breit*, 1996-NMSC-067, ¶ 82 (Appendix) ("Counsel for the State needs . . . to be reminded that his personal belief in the guilt of the defendant, the veracity of the witnesses, the competency and honesty of opposing counsel are absolutely irrelevant, and have no place *at any time* in a courtroom and *cannot* be stated or implied."); *cf. State v. Phillips*, 2000-NMCA-028, ¶ 31, 128 N.M. 777, 999 P.2d 421 (discussing the State's comment during closing argument that the defendant was "peddling poison within the community" and noting that "[e]xamined in the abstract, this kind of pandering is at best unprofessional; at worst, it places in jeopardy an otherwise just verdict."); *State v. Martinez*, 99 N.M. 353, 355-56, 658 P.2d 428, 430-31 (1983) (prosecutor's reference to the defendant as a "chola punk" was determined to be inappropriate and the trial court "strongly reprimanded the prosecutor for the remark").

**{19}** In a case where, similar to the prosecutor's accusation in the present case, a prosecutor asserted that defense counsel had misled the jury and "perpetrat[ed] a fraud on the court," the California Supreme Court warned against comments "denigrating counsel instead of the evidence." *People v. Sandoval*, 841 P.2d 862, 876-77 (Cal. 1992), *aff'd on other grounds by Victor v. Nebraska*, 511 U.S. 1 (1994). The court noted that it is "improper for the prosecutor to imply that defense counsel has fabricated evidence or otherwise to portray defense counsel as the villain in the case," because "[c]asting uncalled for aspersions on defense counsel directs attention to largely irrelevant matters and does not constitute

---

[6] *See Berger*, 295 U.S. at 84 ("[The State] was guilty of misstating the facts in his cross-examination of witnesses; of putting into the mouths of such witnesses things which they had not said; of suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered; of pretending to understand that a witness had said something which he had not said and persistently cross-examining the witness upon that basis; of assuming prejudicial facts not in evidence; of bullying and arguing with witnesses; and, in general, of conducting himself in a thoroughly indecorous and improper manner.").

comment on the evidence or argument as to inferences to be drawn therefrom." *Id.* at 877 (internal quotation marks and citation omitted); *see also United States v. O'Connell*, 841 F.2d 1408, 1428 (8th Cir. 1988) (discussing a prosecutor's personal attacks concerning defense counsel's alleged "improper motives and unethical conduct," in addition to prosecutor's assertion of personal knowledge regarding facts not contained in the record, and remarking that "[c]omments of this nature have no place in a criminal trial" and offended the prosecutorial duty "to secure justice"); *People v. Shaw*, 424 N.E.2d 834, 837 (Ill. App. Ct. 1981) (noting that the State's accusations that defense counsel "were 'hired guns' and 'frauds' and that defense counsel deliberately tried to mislead the jury clearly exceeded the bounds of propriety").

**{20}**    Our Rules of Criminal Procedure set forth general parameters for proper courtroom conduct in providing that "proceedings should be conducted with fitting dignity and decorum, in a manner conducive to undisturbed deliberation, indicative of their importance to the people and to the litigants, and in an atmosphere that bespeaks the responsibilities of those who are charged with the administration of justice." Rule 5-115(A) NMRA. Our Rules of Professional Conduct similarly provide general guidance by stating that it constitutes professional misconduct for attorneys to "engage in conduct that is prejudicial to the administration of justice." Rule 16-804(D) NMRA; *see also* Rule 16-308 NMRA, Comm. Cmt., para. 1 ("Applicable law may require other measures by the prosecutor and knowing disregard of those obligations or a systematic abuse of prosecutorial discretion could constitute a violation of Rule 16-804 . . . of the Rules of Professional Conduct."). The Rules of Professional Conduct more specifically provide that "[a] lawyer shall not . . . in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence . . . ," Rule 16-304(E) NMRA, nor shall a lawyer "engage in conduct intended to disrupt a tribunal," Rule 16-305(D) NMRA.

**{21}**    Rule 16-308, a rule of conduct specifically addressing the professional responsibilities of prosecutors, generally acknowledges that the duty of a prosecutor as a "minister of justice" includes "specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." Rule 16-308, Comm. Cmt., para. 1. This articulation of the particular role and responsibilities of a prosecutor comports with the guidance found in our case law, discussed above. The ABA Standards for Criminal Justice (ABA Standards) also provide guidance directed to prosecutors, which to a certain extent parallel our state rules.[7] Concerning the proper

---

[7] *See* ABA Standards for Criminal Justice: Prosecution Function and Defense Function Standard 3-1.2(b), (c) & (e) (3d ed. 1993) (discussing a prosecutor's duty to exercise discretion, to aim to seek justice above seeking convictions, and "to know and be guided by the standards of professional conduct . . ."); *see also id.* Standard 3-5.2(a) (instructing prosecutors to "support the authority of the court and the dignity of the trial courtroom by strict adherence to codes of professionalism and by manifesting a professional attitude toward the judge, opposing counsel, witnesses, defendants, jurors, and others in the

introduction of evidence, the ABA Standards specifically provide that, contrary to the prosecutor's apparent belief in this case that an attorney may use any information or documentation in his or her possession to strengthen a rebuttal closing argument, it is improper to "permit any tangible evidence to be displayed in the view of the judge or jury which would tend to prejudice fair consideration by the judge or jury until such time as a good faith tender of such evidence is made." ABA Standard 3-5.6(c). Further, "[w]hen there is any substantial doubt about the admissibility of such evidence, it should be tendered by an offer of proof and a ruling obtained." ABA Standard 3-5.6(d).

{22}    If the unprofessional behavior in this case was grounded in a lack of familiarity with the bedrock principles of the prosecutorial function or the rules of professional conduct, we hope this Opinion provides some necessary illumination. The general principles, rules, and guidelines discussed herein are really nothing more than formalized articulations of common sense. If the prosecutor felt it necessary to address defense counsel's remarks regarding the seatbelt citation, a logical response would have been to make a proper objection and express any concerns to the judge, and to also potentially request an instruction from the court to the jury based on such concerns. Alternatively, if an objection did not bring about a satisfactory result, the prosecutor would have been within the bounds of proper commentary to respond to the remarks in rebuttal closing by refocusing the argument on why the seatbelt issue was irrelevant and why the evidence presented was sufficient to prove the elements of the crime beyond a reasonable doubt.

{23}    This Court understands that trial practice requires a great deal of extemporaneous decision-making, and that remarks made in the heat of trial cannot fairly be held to the same standard as those made after time for careful thought and deliberation. Regardless of the circumstances, however, an attorney is never exempt from treating opposing counsel with respect or permitted to denigrate adversaries, especially in front of a jury. Nor should counsel ever confuse or distract the jury by referring to materials outside of evidence. This behavior has no place in the courtroom, and reflects negatively on the profession as a whole. *See Luce v. State*, 642 So. 2d 4, 4 (Fla. Dist. Ct. App. 1994) (Blue, J., specially concurring) ("Trial attorneys must avoid improper argument if the system is to work properly. If attorneys do not recognize improper argument, they should not be in a courtroom. If trial attorneys recognize improper argument and persist in its use, they should not be members of [t]he . . . Bar.").

## III.    CONCLUSION

---

courtroom."); *id.* Standard 3-5.8(a) (instructing prosecutors not to "intentionally misstate the evidence or mislead the jury as to the inferences it may draw."); *id.* Standard 3-5.8(c) & (d) (instructing prosecutors not to "make arguments calculated to appeal to the prejudices of the jury" and to "refrain from argument which would divert the jury from its duty to decide the case on the evidence").

**{24}** Because the prosecutor's improper actions were limited in scope and duration, and because the seatbelt violation issue was peripheral to the evidence presented and the elements of the crime for which Defendant was on trial, the trial court's prompt offering of a curative instruction was a sufficient response. The trial court properly denied Defendant's motion for mistrial and we therefore affirm the Court of Appeals.

**{25}    IT IS SO ORDERED.**

_____
**PATRICIO M. SERNA, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index**

**APPEAL AND ERROR**
Prejudicial Error

**ATTORNEYS**
Comments by Attorneys at Trial

**CRIMINAL LAW**
Driving While Intoxicated
Motor Vehicle Violations

**CRIMINAL PROCEDURE**
Closing Argument
Jury Instructions
Misconduct by Prosecutor
Mistrial