This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date:  October 17, 2016**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                          **NO. S-1-SC-35277**

**SANTANA SERRANO,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Stephen D. Aarons
Santa Fe, NM

for Appellant


Hector H. Balderas, Attorney General
Kenneth H. Stalter, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**DANIELS, Justice.**

{1}     Santana Serrano, convicted by a jury of first-degree murder, raises two issues on direct appeal to this Court. First, Defendant challenges the district court's jurisdiction to try her case. Second, Defendant argues that the district court improperly denied her motion for a new trial, contending that the State's use of captioning and audio enhancements during closing argument to emphasize portions of a cellular phone video, which had been introduced into evidence unenhanced, denied her a fair trial. We affirm Defendant's convictions by nonprecedential decision. *See* Rule 12-405(B) NMRA ("The appellate court may dispose of a case by non-precedential order, decision or memorandum opinion [where] . . . [t]he issues presented have been previously decided . . . ; . . . [t]he presence or absence of substantial evidence disposes of the issue; . . . or . . . [t]he issues presented are manifestly without merit.").

**I.     BACKGROUND**

{2}     The charges in this case arose from events at a gathering of "forty or fifty"

2

people, including Defendant and her boyfriend Deandre Gonzales, on the occasion of the recording of a music video at a venue in Hobbs, New Mexico, called "The Shop." Among those present was the victim, sixteen-year-old Daniel Garcia.

{3}     A confrontation between Garcia and Gonzales began as a verbal argument inside "The Shop," escalating into a fight on the street beyond the parking lot. A crowd of people followed them, and two of the spectators recorded the fight on cellular phones.

{4}     Prior to the fight, Gonzales handed Defendant several items, including a gun. After the fight was under way, when Garcia was getting the better of Gonzales, the disc jockey for the recording of the music video stepped in to break up the fight. Garcia and Gonzales separated, and while the crowd continued to urge Garcia to resume fighting, Gonzales walked over to Defendant and retrieved his gun. Gonzales then pointed the gun at Garcia and fired a single shot at Garcia's head, fatally wounding him. Gonzales and Defendant fled the scene together, but police located them at Defendant's residence early the following morning. Defendant told police that she held the gun during the fight to keep Gonzales from "do[ing some]thing stupid" but claimed he grabbed it away from her prior to the shooting.

{5}     Defendant and Gonzales were both charged with first-degree murder.

3

Defendant, who was seventeen years old at the time of the incident, was charged under NMSA 1978, Section 32A-2-3(H) (2009), as a serious youthful offender and tried in district court as an adult. Following a three-day trial, a jury convicted Defendant of willful and deliberate first-degree murder.

{6} Evidence presented by the State at trial largely centered around the two cell phone videos that captured the events leading up to Garcia's shooting. The State's theory of the case was that Defendant actively participated in Garcia's murder by verbally encouraging and physically aiding Gonzales, and the State submitted to the jury that when Gonzales turned to Defendant looking for his gun, Defendant stated "here it is," extended her arm, and handed the gun to him. The defense offered the jury a different theory of events, contending that Defendant held the gun to keep it from Gonzales but that Gonzales "grabbed the gun" from Defendant and shot Garcia "in an instant," thereby negating any deliberate intention to kill Garcia on Defendant's part. The two cell phone videos were played for the jury multiple times throughout the trial and submitted to the court as evidentiary exhibits without objection.

{7} During the State's closing argument, the prosecutor used as a demonstrative aid an enhanced version of one of the cell phone videos (Closing Video) that visually and

4

audibly focused on the moment the gun exchanged hands between Defendant and Gonzales. The six-second clip was looped four times and had the words "It's right here" superimposed on the video at the instant the State alleged Defendant spoke them. The State claimed Defendant stated the words "here it is" as she handed the gun to Gonzales. Defense counsel did not object to the State's use of the Closing Video. Further, defense counsel took the opportunity during closing argument to again present an alternate interpretation of the events captured on the video.

{8} Counsel for both the State and Defendant reminded the jury that while each was submitting its position concerning what was depicted by the two videos admitted into evidence, the jury ultimately had the duty to make that determination. Immediately before closing arguments, the district court judge also explained to the jury that the attorneys' arguments in closing were not evidence. Accordingly, when the jury submitted a written request to the court for a copy of the Closing Video to consider in deliberations, the district court judge responded that the jury must decide the case based on the evidence that had been admitted by the court. The Closing Video was not submitted as evidence. After three hours of deliberation, the jury returned a verdict of first-degree murder.

{9} Nearly a week later, Defendant moved the district court for a new trial, arguing

5

that the State's use of the enhanced cell phone video clip during closing argument amounted to prosecutorial misconduct on two grounds. First, Defendant claimed that by attributing words to her as bold script overlaid on the video played during closing argument, the State violated the district court's ruling on her oral motion in limine asking the court to "prohibit the state from eliciting testimony from any of its witnesses as to what they believed Defendant's statements to be on the cell phone videos taken of the homicide." Second, Defendant claimed that the State's playing of the Closing Video denied her "a fair trial[ and] denied her Due Process and her right to cross examination and confrontation."

{10}    After briefing and a hearing on the matter, the district court issued findings of fact and conclusions of law and ultimately denied Defendant's motion. As to Defendant's first claim of prosecutorial misconduct, the court reviewed the transcript from the pretrial oral motion in limine in which defense counsel requested that the court prohibit witness comments about Defendant's *statement to police* to allow the jury to reach its own conclusions based on the video and audio recording of that *police interview*. The district court verbally ordered "that no witness [may] comment about the contents of Ms. Serrano's statement, without counsel first approaching the Bench and getting a ruling at that time." No other motions in limine were raised or

6

discussed. The district court concluded that because Defendant's motion in limine and the court's related order did not address issues relevant to the *cell phone videos*, "[t]he State did not violate the Court's Orders in limine."

{11} Concerning Defendant's second contention of prosecutorial misconduct, the district court concluded that "[t]he State's use of the Closing Video did not violate the Defendant's right to a fair trial and due process of law." In relevant part, the district court found that both parties at trial "vigorously" asserted their positions regarding the contents of the cell phone videos, that "[t]he Closing Video did not alter the evidence, display false evidence, or provide unadmitted evidence to the jury," and that "[t]he State's use of the Closing Video was not without precedent or unique." Rather, use of the Closing Video was "no different than turning up the audio volume at a critical part of a recording; hitting the repeat button of a video to review that critical portion again; displaying a probative photograph multiple times to a jury; [or] high-lighting operative words in a 'blow up' of a contract . . . ."

{12} Defendant was sentenced to life imprisonment for the first-degree murder conviction. Defendant now appeals her conviction directly to this Court pursuant to Article VI, Section 2 of the New Mexico Constitution, which provides that "[a]ppeals from a judgment of the district court imposing a sentence of death or life

imprisonment shall be taken directly to the supreme court."

## II. DISCUSSION

### A. The District Court Had Jurisdiction to Try Defendant's Case

{13} For the first time on appeal, Defendant challenges the district court's jurisdiction to try her criminal case. *See State v. Heinsen*, 2005-NMSC-035, ¶ 6, 138 N.M. 441, 121 P.3d 1040 ("This Court has authority to review the subject matter jurisdiction of the district court . . . notwithstanding the fact that the jurisdictional issue was not raised by [the defendant] or the State in district court."). Whether the district court had subject matter jurisdiction is a question of law that we review de novo. *State v. Steven B.*, 2015-NMSC-020, ¶ 7, 352 P.3d 1181.

{14} Under Article VI, Section 13 of the New Mexico Constitution, district courts have jurisdiction over criminal matters not excepted by other constitutional provisions and in special cases and proceedings as established by law. When the defendant is a juvenile, criminal proceedings are first initiated in Children's Court and must comply with the Delinquency Act, NMSA 1978, §§ 32A-2-1 to -33 (1993, as amended through 2016). In New Mexico a serious youthful offender is "an individual fifteen to eighteen years of age who is charged and indicted or bound over for trial for first degree murder." Section 32A-2-3(H). An alleged serious youthful

8

offender is no longer considered a juvenile within the Delinquency Act, is therefore subject to the Rules of Criminal Procedure for the District Courts, and may be tried and sentenced as an adult if convicted. *See* Rule 10-101(A)(1)(a), (A)(2) NMRA; *see also State v. Jones*, 2010-NMSC-012, ¶ 11, 148 N.M. 1, 229 P.3d 474 (describing the procedural and postadjudication requirements and noting the loss of Delinquency Act protections for serious youthful offenders). A first-degree murder charge alone does not automatically confer serious youthful offender status on a child. Section 32A-2-3(H). Rather, there must be a finding of probable cause for first-degree murder through a grand jury indictment or the child must be "bound over for trial for first degree murder" following a preliminary hearing. *Id.*; *see* NMSA 1978, § 32A-2-20(A) (2009). Defendant contends that the district court did not have jurisdiction to try her case because there was no bindover order or indictment in the record. This contention is meritless.

{15}     Defendant was seventeen years old on May 29, 2014, when Garcia was shot and killed. As a result, the State initially filed the first-degree murder charge against her in Children's Court. One week later the State filed a notice of intent to invoke an adult sentence if Defendant, an alleged serious youthful offender, was convicted.

{16}     The Children's Court held a preliminary hearing on June 25, 2014, to

determine whether there was probable cause for first-degree murder. At that hearing, the judge found probable cause to believe that Defendant committed first-degree murder, bound her over for trial in the district court, and ultimately signed a bindover order that is included in the record proper for this case. Following the preliminary hearing, the State filed a criminal information for first-degree murder in the district court. *See State v. Vaughn*, 1964-NMSC-158, ¶ 6, 74 N.M. 365, 393 P.2d 711 ("District courts have jurisdiction of criminal cases, [N.M. Const.] Art. VI, § 13. The district court acquired jurisdiction of this case upon the filing of the information."). We hold that the district court had proper jurisdiction to try Defendant's case.

**B.      The District Court Was Correct in Rejecting Defendant's Prosecutorial Misconduct Claim and Denying Defendant's Motion for a New Trial**

{17}      Defendant next claims that the prosecutor's use of the Closing Video and comments referencing that video during closing arguments constituted misconduct that deprived her of a fair trial. Specifically, Defendant argues that attribution of statements to her in the Closing Video absent a scientific basis introduced facts outside evidence presented at trial and violated her right to confrontation, thereby resulting in reversible error. We reject Defendant's claims on three grounds: (1) they were not properly preserved for appellate review, (2) there was no fundamental error, and (3) even if the claims had been preserved, the district court did not abuse its

discretion in denying Defendant's motion for a new trial.

**1. Defendant Failed to Preserve the Claim of Prosecutorial Misconduct During Closing Arguments**

{18} "When an issue of prosecutorial misconduct is preserved by a timely objection at trial, we review the trial court's ruling on a claim under the deferential standard of abuse of discretion," *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted), and we "will not disturb the trial court's denial of a motion for a new trial unless the ruling is arbitrary, capricious or beyond reason," *State v. Mann*, 2002-NMSC-001, ¶ 17, 131 N.M. 459, 39 P.3d 124 (internal quotation marks and citation omitted). Where the trial court has not had the opportunity to rule on the matter because counsel failed to timely object, we are limited to fundamental error review. *Allen*, 2000-NMSC-002, ¶ 95.

{19} The record in this case reflects, as Defendant concedes, that counsel failed to timely object to use of the Closing Video in summation or at any point before the jury was discharged and instead raised the matter for the first time in the motion for a new trial following the jury's verdict. New Mexico law provides that a motion for a new trial is not sufficient to preserve an issue that was not otherwise raised during trial proceedings. *See State v. Pacheco*, 2007-NMSC-009, ¶¶ 7-8, 141 N.M. 340, 155 P.3d 745 (determining that because the defendant raised his claim of error for the first time

in a motion for a new trial, the claim was not properly preserved for appellate review); *see also* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked."). "The preservation rule is more than a mere technicality; its purpose is to give the trial court the opportunity to correct any error." *State v. Wacey C.*, 2004-NMCA-029, ¶ 15, 135 N.M. 186, 86 P.3d 611. For example, in this case had the use of the enhanced video as a demonstrative aid been inappropriate, the trial court could have responded to a timely objection by, among other remedial measures, directing the prosecutor to cease using it and directing the jury to disregard it. Because Defendant failed to make a timely objection in the district court, the issue is not preserved for our consideration absent a showing of fundamental error. *See* Rule 12-216(B)(2) (providing an exception to the preservation rule for questions involving fundamental error).

**2.    Use of the Closing Video During Summation Was Not Fundamental Error**

{20}    To constitute fundamental error, an error "must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted). "The exacting standard of review for reversal for fundamental error requires the question

12

of guilt be so doubtful that it would shock the conscience of the court to permit the verdict to stand." *State v. Samora*, 2013-NMSC-038, ¶ 17, 307 P.3d 328 (alterations omitted) (internal quotation marks and citation omitted). "The first step in reviewing for fundamental error is to determine whether an error occurred. If that question is answered affirmatively, we then consider whether the error was fundamental." *State v. Cabezuela*, 2011-NMSC-041, ¶ 49, 150 N.M. 654, 265 P.3d 705 (internal quotation marks and citation omitted).

{21} Our review of the record finds nothing that makes Defendant's guilt so doubtful that her conviction shocks the conscience of the Court. This is a classic case where the jury had to resolve conflicting testimony and determine Defendant's intent in light of all the evidence. *See id.* ¶ 45 (noting that a jury is free to reject the defendant's version of the facts). But more important is that to even consider whether the Court's conscience is shocked first requires that we determine error in the record. Based on the analysis that follows, we conclude that Defendant fails to meet that preliminary threshold of demonstrating error in the district court's denial of Defendant's motion for a new trial grounded on her claim of prosecutorial misconduct during closing arguments.

**3. Even Had the Issue Been Preserved, the District Court Did Not Abuse Its Discretion in Denying Defendant's Motion for a New Trial**

13

{22} Ordinarily we would not reach the question of whether the district court abused its discretion in rejecting Defendant's prosecutorial misconduct claim and denying Defendant's motion for a new trial because the matter was not preserved. Though not required to do so, we address the matter here because Defendant asked this Court to review the district court's ruling for an abuse of discretion and both parties briefed the matter accordingly. Additionally, we have a full record before us because the district court did not deny Defendant's motion for new trial for lack of preservation but instead denied the motion after considering the underlying merits and providing the parties full opportunities for briefing and an evidentiary hearing. "Because trial judges are in the best position to assess the impact of any questionable comment, we afford them broad discretion in managing closing argument" and will disturb a jury's verdict and the trial court's judgment only "in the most exceptional circumstances." *State v. Sosa*, 2009-NMSC-056, ¶ 25, 147 N.M. 351, 223 P.3d 34. Because we determine next that there was no prosecutorial misconduct, we would hold that the district court did not abuse its discretion even if we were to ignore that Defendant's objection was untimely.

**C.      Use of the Closing Video and the Prosecutor's Comments Referring to the Video Did Not Constitute Misconduct**

{23} In *Sosa*, this Court articulated three nonexclusive factors to consider when

14

addressing challenges to a closing statement under both fundamental error and abuse of discretion standards of review: "(1) whether the statement invade[d] some distinct constitutional protection; (2) whether the statement [was] isolated and brief, or repeated and pervasive; and (3) whether the statement [was] invited by the defense." *Id.* ¶ 26. "When these considerations lead to a conclusion that the [prosecutor's] comments materially altered the trial or likely confused the jury by distorting the evidence, the State has deprived the defendant of a fair trial, and reversal is warranted." *State v. Torres*, 2012-NMSC-016, ¶ 10, 279 P.3d 740 (internal quotation marks and citation omitted).

{24}	First, the prosecutor's actions and statements did not invade any of Defendant's distinct constitutional protections. Defendant contends that the Closing Video and the prosecutor's statements with reference to the video violated her constitutional right to confrontation. Defendant bases this claim on an implication that a video and audio recording expert was necessary to testify regarding the methods for enhancement that created the Closing Video and the techniques for interpreting the video contents. Defendant argues that by failing to call an expert, the State deprived her of the opportunity to cross-examine the expert, thereby circumventing Defendant's right to confrontation. Defendant misconstrues the constitutional right to confrontation.

15

{25} Under the Sixth Amendment, every criminal defendant "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Under the Confrontation Clause, "[a]n out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. Navarette*, 2013-NMSC-003, ¶ 7, 294 P.3d 435. "[A] statement can only be testimonial if the declarant made the statement primarily intending to establish some fact with the understanding that the statement may be used in a criminal prosecution." *Id.* ¶ 8. In this case the statement "It's right here" superimposed on the Closing Video was alleged to be Defendant's own statement, captured spontaneously and without Defendant's knowledge on an amateur cellular phone video, and does not qualify as a "testimonial statement" for purposes of the Confrontation Clause. *See State v. Telles*, 2011-NMCA-083, ¶¶ 19-21, 150 N.M. 465, 261 P.3d 1097 (holding that admission at trial of a secretly videotaped conversation between the defendant and his accomplice at the police station did not violate the defendant's right to confront a witness and concluding that the "[d]efendant's own statements during the conversation . . . were nontestimonial"). Defendant also appears to argue that a nontestifying expert attributed the superimposed statement to her

16

because Jessica Quiroz, a Hobbs Police Department crime scene technician, prepared the audio-enhanced looped version of the cell phone video for the State. But it was the prosecutor who created the final PowerPoint presentation incorporating the Closing Video with the superimposed statement and who submitted to the jury the State's position that Defendant could be heard on the video informing Gonzales that she was handing the gun to him. Consequently, we conclude that the prosecutor's statements did not invade Defendant's right to confrontation.

{26} The prosecution and defense are both permitted wide latitude in their closing statements. *State v. Duffy*, 1998-NMSC-014, ¶ 56, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 & n.6, 275 P.3d 110. This latitude is tempered by the requirement that "the prosecutor's remarks must be based upon the evidence [presented at trial] and the fair and reasonable inferences to be drawn therefrom." *Id.* (internal quotation marks and citation omitted).

{27} In this case, the two cell phone videos were admitted into evidence as State Exhibits 53 and 54 without objection and played at various times throughout the trial, often being stopped or paused to draw a witness's attention to a particular moment or detail. From the inception of the trial, the State asked the jury to watch the cell phone videos closely and to consider that "the gun was in [Defendant's] hand" and

17

that "she stood by her man." Defense counsel asked the jury to "digest" the video in the context of the trial testimony the jury was about to hear and suggested to the jury that Defendant took the gun from Gonzales to avoid escalating the violence. Both the prosecutor and defense counsel elicited witness testimony and introduced evidence to support their respective theories of the case.

{28}    The Closing Video in the State's final presentation to the jury focused on a looped six-second clip from the already admitted State Exhibit 53 to emphasize the State's position. Quiroz testified that she did not edit or alter the video in any way, but merely increased the volume of the original audio and provided the State with a looped and a nonlooped version. The State then incorporated the looped version of the video into its final PowerPoint presentation with the contested words "It's right here" superimposed on the image. In *State v. Orzen*, the state similarly replayed a film previously admitted into evidence during closing argument but displayed it on a screen different from the one used when the jury originally viewed it. *See* 1972-NMCA-006, ¶ 27, 83 NM. 458, 493 P.2d 768. To emphasize portions of that film to the jury, the prosecutor "slowed the film, stopped it, reversed it, and made comments concerning what was shown," which the defendant claimed amounted to misconduct. *Id.* The Court of Appeals disagreed, determining that the previously admitted film

18

was evidence and the prosecutor's comments about the film "were no more than comments directing the jury's attention to what the exhibit showed." *Id.* ¶ 28. Similarly in this case, the Closing Video did not alter or distort evidence but rather highlighted portions of the cell phone video already admitted into evidence without objection. And "[t]he prosecutor's comments [referring to the video] during the closing arguments stated conclusions and inferences reasonably drawn from the facts and circumstances and were within the permissible range of argument." *Duffy*, 1998-NMSC-014, ¶ 58 (internal quotation marks and citation omitted).

{29} Application of the second and third *Sosa* factors to this case does not alter the conclusion. The prosecutor played the contested section of the Closing Video with the superimposed words multiple times and also verbally referenced those words throughout the closing argument. Because we conclude that the prosecutor's comments were appropriate for closing argument and made reasonable inferences "based on [the] evidence," their frequency is irrelevant. *See Sosa*, 2009-NMSC-056, ¶ 29 (noting reversal where "lengthy" comments by the state were "not based on evidence"). Further, taken in context of both the argument and the overall trial, it is entirely reasonable that the prosecutor was responding to defense counsel's alternative interpretation of the same evidence that "'opened the door' to the

prosecutor's comments." *Id.* ¶ 33 (citation omitted); *see Torres*, 2012-NMSC-016, ¶¶ 7-8 (reviewing claims of a prosecutor's improper comments in closing by "view[ing] the comment at issue in context with the closing argument as a whole and in the context of the remaining trial proceedings [in order to] gain a full understanding of the comments and their potential effect on the jury" (internal quotation marks and citation omitted)).

{30}     We hold that the district court did not abuse its discretion in denying Defendant's motion for a new trial on the grounds that the State's use of the Closing Video and comments about that video during closing arguments constituted misconduct that deprived Defendant of a fair trial. Because there was no misconduct, we also conclude there was no error, fundamental or otherwise.

**III.     CONCLUSION**

{31}     For the reasons set forth in this decision, Defendant's judgment of conviction is affirmed.

{32}     **IT IS SO ORDERED.**


_____

**CHARLES W. DANIELS, Chief Justice**

20

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**BARBARA J. VIGIL, Justice**

_____
**JUDITH K. NAKAMURA, Justice**