**Certiorari Denied, July 18, 2011, No. 33,035**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-083**

**Filing Date: April 28, 2011**

**Docket No. 28,943**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**FRANKIE TELLES,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Stephen Bridgforth, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline Cooper, Acting Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**GARCIA, Judge.**

**{1}** Frankie Telles (Defendant) appeals his convictions for second-degree murder (firearm enhancement), aggravated assault (firearm enhancement), tampering with evidence, and conspiracy to commit tampering with evidence. Defendant raises four issues on appeal, including a violation of the Confrontation Clause under the Sixth Amendment. We conclude that the district court committed no error and affirm Defendant's convictions.

1

**BACKGROUND**

{2}     On the night of February 27, 2004, fourteen-year-old J.O. (Victim), was shot and killed while Victim was walking home in the company of his friend, A.B. Defendant was identified as the person who shot Victim.

{3}     A.B. testified that Victim and several friends started their evening by dancing at Club Fusion Teen Center. While walking home down Union Street, three of the friends stopped at the Pic-Quik convenience store to purchase food. Victim and A.B. were not hungry and continued walking down Union Street toward Victim's home. After crossing the railroad tracks, a dark-colored car passed the pair, and the person later identified as Defendant yelled things at them like "East Side" and "West Side." A.B. testified that he "was really scared," and the two continued walking. Someone in the car said, "We'll come back for you" and then drove away. Looking back, A.B. saw the car make a U-turn in the intersection past the railroad tracks and return to stop in the middle of the street by A.B. and Victim. Three males got out of the car, one carrying a dark-colored handgun pointed at the ground, one carrying an object described as a brick, and one carrying a silver-colored handgun that was pointed at Victim and A.B. One of the individuals threw the brick-like object and hit Victim in the leg. Defendant, whom A.B. described as the bigger or wider of the three and the one carrying the silver-colored gun, began shooting. After shots were fired, A.B. heard Victim yelling in pain and then pulled Victim to the ground and laid on top of him. One of the three assailants then retrieved the brick-like object while the other two returned to the car, and they subsequently drove away.

{4}     D.J. testified that Defendant and several friends started the night in question by drinking alcohol at D.J.'s home. Five of them, including Defendant and D.J., left in R.O.'s blue car to drive to the Pic-Quik on Union Street. The car approached Victim and A.B. on Union Street near the railroad tracks, and Defendant yelled at the pair as the car passed. D.J. indicated that the three individuals who exited the car at the time of the confrontation were Defendant, R.O., and himself. During the investigation following the incident and at trial, D.J. identified Defendant as the person who fired his gun. After the incident, the three got back in the car, and they took D.J. home. D.J. then called his mother, G.J., and told her that he wanted her to come home. G.J. returned home with T.M., and D.J. told them that Defendant had shot somebody. Shortly thereafter, Defendant returned to D.J.'s home in a different car. G.J. and T.M. testified regarding D.J.'s statements made to them about the incident. T.M. also testified that Defendant told her that he had shot somebody. T.M. further testified that she knew that Defendant had a silver-colored revolver.

{5}     Upon locating Defendant, the Las Cruces Police Department questioned Defendant about the shooting incident. Defendant indicated that he was not involved in the incident because he was in Alamogordo that weekend with T.M., identified as his girlfriend. T.M. was then questioned by detectives and implicated Defendant in the shooting. Defendant was then given his Miranda warnings, signed a waiver, and was questioned a second time by the detectives. Defendant gave a recorded statement to the detectives at that time. After the recorded statement was completed, the detectives placed Defendant in a room with R.O. with

the hope that the two would talk with one another and potentially disclose more information. This conversation between Defendant and R.O. was secretly videotaped by the detectives, the video was played for the jury, and a transcript of the conversation was also provided to the jury. Finally, a telephone conversation between Defendant and his father was also recorded while Defendant was in jail, and the district court admitted the conversation into evidence.

{6}     Defendant was convicted in a jury trial and now raises four issues on appeal: (1) whether the district court erred when it admitted D.J.'s out-of-court statement to G.J. and T.M. as an excited utterance pursuant to Rule 11-803(B) NMRA; (2) whether Defendant's constitutional right to confront a witness against him was violated when the district court admitted the secretly videotaped conversation at the police station between Defendant and R.O.; (3) whether the district court erred when it admitted a recorded telephone conversation at the jailhouse between Defendant and his father; and (4) whether the district court erred in admitting evidence regarding Defendant's invocation of his constitutional right against self-incrimination.

**DISCUSSION**

**I.      Excited Utterance Testimony**

{7}     Defendant argues that the testimony by G.J. and T.M. recounting D.J.'s out-of-court statement shortly after the shooting was inadmissible hearsay. The State asserts that the district court properly admitted the statement as an excited utterance pursuant to Rule 11-803(B).

{8}     The admission of evidence is within the sound discretion of the district court and will only be set aside upon a showing of an abuse of discretion. *State v. Stanley*, 2001-NMSC-037, ¶ 5, 131 N.M. 368, 37 P.3d 85. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

{9}     An "excited utterance" is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 11-803(B). "The theory underlying the excited utterance exception is that the exciting event induced the declarant's surprise, shock, or nervous excitement which temporarily stills capacity for conscious fabrication and makes it unlikely that the speaker would relate other than the truth." *State v. Macias*, 2009-NMSC-028, ¶ 30, 146 N.M. 378, 210 P.3d 804 (internal quotation marks and citation omitted). "There is nothing in the case law nor in the ordinary meaning of 'excited' which restricts the meaning of the word to any narrow requirement of a frenzied or hyperactive state." *State v. Flores*, 2010-NMSC-002,

¶ 48, 147 N.M. 542, 226 P.3d 641. Instead, we examine the totality of the circumstances underlying a particular fact situation, including the following factors:

> [H]ow much time passed between the startling event and the statement, and whether, in that time, the declarant had an opportunity for reflection and fabrication; how much pain, confusion, nervousness, or emotional strife the declarant was experiencing at the time of the statement; whether the statement was self-serving; and whether the statement was made in response to an inquiry.

*Id.* ¶ 49 (alteration omitted) (internal quotation marks and citation omitted). We have also recognized that "the excited utterance doctrine [is] not so much limited in time as it [is limited] to the emotional state of the declarant when making the out-of-court declaration." *State v. Mares*, 112 N.M. 193, 201, 812 P.2d 1341, 1349 (Ct. App. 1991); *see State v. Robinson*, 94 N.M. 693, 697, 616 P.2d 406, 410 (1980) (recognizing that "under the excited utterance doctrine, there is no definite or fixed limit on time"); *see also State v. Maestas*, 92 N.M. 135, 140, 584 P.2d 182, 187 (Ct. App. 1978) (noting that "the time sequence continues as long as the [declarant] is under the stress and strain of the excitement caused by the event" and that "[a]dmissibility depends more on circumstances than on time").

**{10}** D.J.'s statement to his mother and T.M. was made after he returned home following the shooting. We must review the totality of the circumstances regarding the time sequence of this statement, as well as the stress and emotional strife declarant was experiencing at the time of the statement. *See Flores*, 2010-NMSC-002, ¶ 49. D.J. was only sixteen years old at the time of the shooting. He felt that he was actually in the line of fire and became scared when the shots rang out. He got back in the car, and the next thing he remembered was being taken home. Although the actual time sequence was not described in specific detail, the district court could have reasonably determined that the car returned to D.J.'s home immediately after the shooting. *See Rojo*, 1999-NMSC-001, ¶ 41. Moreover, D.J.'s home was close to where the shooting occurred. Once home, D.J. called his mother and told her, "You need to get home."

**{11}** G.J. was at the store with T.M. when G.J. received the call from her son saying, "Mom, get home . . . [j]ust get home." G.J. testified that her son "sounded really scared." G.J. and T.M. left the store and hurried straight home. When G.J. walked into her home, her son looked scared, and she asked him what was wrong. As D.J. told her about the shooting without further prompting, he was really scared, really nervous, shook-up, and upset, telling her what happened really quickly because Defendant and the others were returning to the house. G.J. further testified that D.J. was walking or standing as he talked, rather than sitting down. T.M. was also present when D.J. told his mother about the shooting. T.M. similarly testified that D.J. was really nervous and scared, and that D.J. just told them what happened without them having to ask him questions.

4

**{12}** Based upon the totality of the circumstances, we conclude that the district court did not abuse its discretion when it admitted D.J.'s out-of-court statement to his mother and T.M. under the excited utterance exception set forth in Rule 11-803(B). The statement was made shortly after the shooting. Furthermore, D.J. continued to show signs of stress and emotional strife caused by the shooting incident, as demonstrated by his appearing nervous and scared, talking quickly, and walking or standing as he talked. In addition, the declaration was voluntarily made and was not in response to any direct questioning. Finally, the declaration was not self-serving since it implicated D.J. as a witness to the confrontation. As the district court did not abuse its discretion, it is unnecessary for this Court to determine whether the harmless error doctrine applies.

## II.  Confrontation Clause Challenge

**{13}** Defendant asserts that the admission of the secretly videotaped conversation at the police station between Defendant and R.O. violated his right to confront the witnesses against him under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The State contends that no violation of the Confrontation Clause occurred because admission of Defendant's own statements did not violate the Confrontation Clause, and R.O.'s statements were non-testimonial. It is undisputed that Defendant was unable to cross-examine R.O. as a result of R.O.'s unavailability to testify at trial.

**{14}** Initially, we note that "[t]he hearsay rule and the Confrontation Clause are not co-extensive and must remain distinct." *State v. Mendez*, 2010-NMSC-044, ¶ 28, 148 N.M. 761, 242 P.3d 328. Whereas "[t]he hearsay rule is intended to ensure that the jury is not exposed to unreliable evidence," the right of confrontation "guarantees the accused in a criminal trial the right to be confronted with the witnesses against him, regardless of how trustworthy the out-of-court statement may appear to be." *Id.* (internal quotation marks and citation omitted). As a result, "[o]nce it has been established that the Confrontation Clause does not bar admission of the statement, the rules of evidence govern whether the statement is admissible." *State v. Aragon*, 2010-NMSC-008, ¶ 6, 147 N.M. 474, 225 P.3d 1280. Here, Defendant does not argue that the statements were inadmissible under the rules of evidence, so we only address whether the admission of the statements violated the Confrontation Clause. *See State v. Torres*, 2005-NMCA-070, ¶ 34, 137 N.M. 607, 113 P.3d 877 (stating that this Court will not address issues unsupported by argument and authority). Questions of admissibility under the Confrontation Clause are issues of law that we review de novo. *State v. Bullcoming*, 2010-NMSC-007, ¶ 10, 147 N.M. 487, 226 P.3d 1, *cert. granted*, 131 S. Ct. 62 (2010).

**{15}** Our Supreme Court has applied the analysis in *Crawford v. Washington*, 541 U.S. 36 (2004), to determine the admissibility of evidence challenged pursuant to the Confrontation Clause. *See, e.g.*, *Aragon*, 2010-NMSC-008, ¶ 6. Citing *Crawford*, the Court recognized that a critical distinction exists between testimonial and non-testimonial hearsay evidence, and the Confrontation Clause only applies to testimonial evidence. *Aragon*, 2010-NMSC-008, ¶ 6. If the conversation between Defendant and R.O. was non-testimonial in

5

nature, then Defendant recognizes that this evidence cannot be excluded on the basis of a Confrontation Clause challenge. Defendant asserts, however, that these statements were testimonial because Defendant and R.O. "would have never made the statements resulting in the DVD evidence without the involvement of government[al] officers[.]"

{16} Detective Myers testified that shortly after his second interview with Defendant, he placed Defendant and R.O. in a room together at the station because "we thought that if we put them in the room together, we may get a little bit more information that no one was willing to tell us, but they might talk to each other about." Defendant "might tell [R.O.] a little more than he'd tell [me]." The videotaping of the conversation between Defendant and R.O. was "sort of clandestine, hidden camera," and "[w]e just put them in there and hoped for the best." Both Defendant and R.O. subsequently made inculpatory statements implicating themselves in the shooting. Whether the involvement of governmental officers in obtaining secretly recorded statements from suspects in a criminal investigation brings those statements within the realm of testimonial statements under the Confrontation Clause is a matter of first impression in New Mexico.

{17} *Crawford* recognizes that statements made as a result of "police interrogations" are testimonial in nature. 541 U.S. at 68. The United States Supreme Court later clarified that police interrogations produce testimony when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). In *State v. Lopez*, our Supreme Court determined that statements made by co-defendants during a police interrogation were "testimonial" when the questioning by officers constituted an attempt to "prove past events potentially relevant to later criminal prosecution." 2007-NMSC-037, ¶ 20, 142 N.M. 138, 164 P.3d 19 (internal quotation marks and citation omitted). Therefore, we must determine whether the detectives' involvement in the clandestine videotaped conversation arranged between Defendant and R.O. constitutes a "police interrogation" for purposes of the Confrontation Clause.

{18} Defendant acknowledges that a person has a minimal expectation of privacy while in police custody, but relies on *State v. Dedman* to argue that a core concern underlying protection under the Confrontation Clause is the "involvement of government officers in the production of testimony with an eye toward trial, because this provides a unique potential for prosecutorial abuse." 2004-NMSC-037, ¶ 29, 136 N.M. 561, 102 P.3d 628 (alteration omitted) (internal quotation marks and citation omitted), *overruled on other grounds by Bullcoming*, 2010-NMSC-007. As a result, Defendant contends that since Defendant and R.O. would never have made the statements resulting in the video evidence without governmental involvement, the conversation was testimonial and protected under the Confrontation Clause. Defendant cites no additional supporting authority, but instead recognizes contrary authority. *See Ferrer v. State*, 2 So. 3d 1111, 1112 (Fla. Dist. Ct. App. 2009) (noting that law enforcement did not foster any expectation of privacy and that recorded conversations with the co-defendant at the police station were not testimonial in violation of *Crawford*).

**{19}** We agree with the State that Defendant's own statements during the conversation with R.O. were non-testimonial and do not violate the Confrontation Clause. *See State v. Hernandez*, 2009-NMCA-096, ¶¶ 7, 16, 147 N.M. 1, 216 P.3d 251 (recognizing that a defendant's own admissions generally do not present Confrontation Clause concerns as long as they are authenticated and admitted through a proper vehicle); *State v. Castillo-Sanchez*, 1999-NMCA-085, ¶ 23, 127 N.M. 540, 984 P.2d 787 (recognizing that a defendant's own admissions cannot "violate his right to confront the witnesses against him").

**{20}** We also agree with the State that R.O.'s statements were non-testimonial. In *Davis*, the Supreme Court recognized that "statements made unwittingly to a [g]overnment informant" and "statements from one prisoner to another" were clearly non-testimonial. *Davis*, 547 U.S. at 825. Relying on *Davis*, the Tenth Circuit Court of Appeals held that an accomplice's statements to an undercover informant acting as a fellow prisoner were non-testimonial even though those statements were clandestinely recorded by the informant. *United States v. Smalls*, 605 F.3d 765, 768, 778 (10th Cir. 2010). The Court reasoned that although the government coordinated the placement of the wired informant in a room with the accomplice, no interrogation occurred where the accomplice spoke freely with the informant. *Id.* at 779. Similarly, we conclude that no interrogation of either Defendant or R.O. occurred where the detectives coordinated the placement of Defendant and R.O. in a room with a hidden camera, but did not question them. Because Defendant and R.O. talked freely with one another without police questioning, no police interrogation will be recognized for Confrontation Clause purposes. Therefore, despite the subversive nature of the detectives' maneuver, both Defendant's and R.O.'s statements were non-testimonial for Confrontation Clause purposes.

**{21}** As a result, we conclude that the Confrontation Clause did not bar admission of the recorded police station conversation between Defendant and R.O., and it is unnecessary for this Court to determine whether the harmless error doctrine applies.

### III.    Recorded Jailhouse Telephone Conversation

**{22}** Defendant argues that the district court erred when it admitted a recorded telephone conversation at the jailhouse between Defendant and his father. Three of Defendant's recorded jailhouse conversations were proffered by the State as evidence. At trial, Defendant asserted that all three conversations should be excluded as improper impeachment evidence. After reviewing all three recordings in camera, the district court ruled that only the conversation between Defendant and his father would be admitted as evidence relevant to the element of intent to commit the charge of first-degree murder. In the recording, Defendant told his father that he learned from discovery paperwork who had "ratted" against him. When his father inquired who the person was, Defendant replied, "It was [T.M.] and that other guy that, [expletive], that I let live."

**{23}** The admission of Defendant's statement to his father is within the sound discretion of the district court and will only be set aside upon a showing of a clear abuse of that

discretion. *See Stanley*, 2001-NMSC-037, ¶ 5 (stating that appellate courts "examine the admission or exclusion of evidence for abuse of discretion, and the [district] court's determination will not be disturbed absent a clear abuse of that discretion"). On appeal, Defendant appears to abandon his position that the statement constitutes improper impeachment evidence and now asserts that the district court abused its discretion based upon a misunderstanding of the law. However, Defendant fails to identify any particular rule of law that the district court misunderstood, but instead asks for review under *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985).

**{24}** The State offered the conversation as evidence relevant to establish the element of intent to commit the charge of first-degree murder under Count I of the indictment. No specific argument has now been put forward by Defendant to rebut the relevance of the conversation to show intent. Additionally, both parties recognize that tape recordings of a defendant's own statements may be admitted as admissions of a party-opponent. *See* Rule 11-801(D)(2)(a) NMRA (stating that a party's own admission is admissible non-hearsay); *see also State v. Johnson*, 2010-NMSC-016, ¶¶ 6, 21, 148 N.M. 50, 229 P.3d 523 (recognizing that a defendant's own statements in recorded jailhouse phone conversations implicating himself in criminal conduct were properly admitted under Rule 11-801(D)(2)(a)). Additionally, we note that the admission of Defendant's father's follow-up question regarding who "ratted" was properly admitted to show context for Defendant's statement. *See Castillo-Sanchez*, 1999-NMCA-085, ¶ 23 (recognizing that the other party's statements in a conversation containing an admission by the defendant were admissible since they were necessary to put the defendant's statements in context). Once evidence is properly admitted under any theory, the admission of the evidence by the district court will be affirmed. *See Macias*, 2009-NMSC-028, ¶ 17 (recognizing that an appellate court may affirm the district court's admission of evidence if it was right for any reason). Therefore, the district court did not err by admitting Defendant's recorded jailhouse conversation with his father.

### IV.    Right Against Self-Incrimination

**{25}** Defendant's final argument is that his Fifth Amendment right against self-incrimination was violated at trial. Again citing *Franklin* and *Boyer*, Defendant fails to identify any evidentiary portion of the trial where the claimed error occurred. *See Franklin*, 78 N.M. at 129, 428 P.2d at 984; *Boyer*, 103 N.M. at 659, 712 P.2d at 5. Defendant notes that the only reference at trial to the Fifth Amendment occurred when Defendant objected to the testimony of T.M. regarding whether Defendant had asked her to "[take] the Fifth." This reference to T.M.'s rights will not be expanded to include Defendant's right against self-incrimination. *See State v. Calvillo*, 110 N.M. 114, 119, 792 P.2d 1157, 1162 (Ct. App. 1990) (recognizing that the Fifth Amendment right against self-incrimination is personal to the defendant or witness and that a witness's failure to testify ordinarily does not infringe on the defendant's right against self-incrimination). We decline to further address Defendant's argument where it is not supported by legal authority or any further reference

to the record before this Court. *See State v. Barrera*, 2001-NMSC-014, ¶ 33, 130 N.M. 227, 22 P.3d 1177 (recognizing that appellate courts will not review arguments unsupported by references to the record and cited legal authority). As a result, we determine that the district court did not allow Defendant's Fifth Amendment right against self-incrimination to be violated during the trial in this matter.

**CONCLUSION**

**{26}** We conclude that the district court did not err when it admitted the evidence objected to by Defendant in this appeal. Therefore, we affirm Defendant's convictions for second-degree murder (firearm enhancement), aggravated assault (firearm enhancement), tampering with evidence, and conspiracy to commit tampering with evidence.

**{27}** **IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for *State v. Telles*, Docket No. 28,943**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-CF | Confession |
| CT-CT | Confrontation |
| CT-RF | Right to Confrontation |
| CT-SL | Self-incrimination |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-HO | Homicide |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-CF | Confession |
| CA-RA | Right Against Self-incrimination |
| CA-RT | Right to Confrontation |
| | |
| **EV** | **EVIDENCE** |
| EV-AD | Admissions |

EV-HR                Hearsay Evidence