This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37776**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RAUL RODRIGUEZ a/k/a**
**RAUL GARCIA RODRIGUEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Trujillo Dodd, Torres, O'Brien, Sanchez, LLC
Donna Trujillo Dodd
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Defendant Raul Rodriguez appeals his conviction for one count of trafficking (by distribution) (methamphetamine), contrary to NMSA 1978, Section 30-31-20(A)(2) (2006); and one count of conspiracy to commit trafficking (by distribution) (methamphetamine), contrary to NMSA 1978, Section 30-28-2 (1979). On appeal, Defendant argues that the search of his vehicle was illegal; the grand jury indictment should have been vacated; statements by his codefendant were admitted in violation of the Confrontation Clause; there were violations of the best evidence rule; there was

insufficient evidence for the jury to find him guilty of conspiracy; and he received ineffective assistance of counsel.[1] We affirm the district court in all respects.

**BACKGROUND**

**{2}** An Albuquerque Police Department (APD) undercover narcotics team conducted a "buy-bust" operation at a 7-Eleven convenience store. In a typical "buy-bust" operation, an undercover detective purchases drugs from an individual and that individual is then arrested immediately after the drugs are purchased. During this particular "buy-bust" operation, undercover detectives posed as drug buyers and attempted to purchase narcotics or illegal drugs from people selling in the particular area they were working.

**{3}** While Detective Jaime Rascon—in his undercover capacity wearing civilian clothing—was at the 7-Eleven posing as a drug buyer, he came into contact with Codefendant Trinidad Saldaña (Codefendant). After he approached her and conversed casually with her for a few minutes, he learned that she "push[ed] dope." Detective Rascon asked Codefendant if she could get him some "shards," a term that refers to crystal methamphetamine.

**{4}** Detective Rascon gave Codefendant $40 worth of "operational funds" or "buy money[,]" which is U.S. currency that APD provides to its detectives in order to facilitate such a transaction.[2] Codefendant then sent some text messages from her cell phone.

---

[1]Defendant makes several other arguments, including: (1) there was no probable cause for the initial stop and arrest, (2) there were multiple violations of discovery rules, and (3) his rights under *Brady* were violated. However, Defendant's briefing either does not refer to how these issues were preserved, or does not provide citations to the record proper for arguments by the parties or specific rulings by the district court. We "will not search the record to see if an issue was preserved where the defendant did not provide appropriate transcript references." *State v. Rojo*, 1999-NMSC-001, ¶ 44, 126 N.M. 438, 971 P.2d 829; *see State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court."). Further, these arguments are completely undeveloped. "A party cannot throw out legal theories without connecting them to any elements and any factual support for the elements." *Ortiz*, 2009-NMCA-092, ¶ 32 (internal quotation marks and citation omitted). We will not "review an undeveloped and unclear argument on appeal." *Id.* Therefore, we decline to address these issues further.

Defendant also enumerates six grounds upon which he premises a claim of police misconduct warranted dismissal of his case in the district court. Defendant's argument in this regard relies almost entirely on the remaining issues raised in this appeal. Because we do not reverse on any of these remaining grounds, we do not address this argument. Likewise, Defendant raises a cumulative error argument. "Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 397. We conclude that Defendant has not demonstrated error in this case; thus, the doctrine of cumulative error does not apply. *See State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 ("Where there is no error to accumulate, there can be no cumulative error." (alteration, internal quotation marks, and citation omitted)).

[2]Prior to executing this particular "buy-bust" operation, and in accordance with APD procedure, the "operational funds," or "buy money" that were to be used to potentially purchase drugs, were photographed in order to document the serial number, and to ensure that the correct funds could be recovered after the "buy-bust" operation.

After she sent the text messages, she and Detective Rascon waited for her "connect" to arrive. Shortly thereafter, just as she stated he would do, her "connect," later identified as Defendant, arrived in a white Camaro, and parked directly in front of Codefendant and Detective Rascon. Defendant was the sole occupant of the car. Codefendant walked to the driver's side window of the white Camaro and gave Defendant the "buy money" provided by Detective Rascon. Defendant then gave Codefendant "something" in exchange for the "buy money." Codefendant walked back to Detective Rascon and handed him two clear plastic bags containing a clear crystal-shaped substance. The substance in the baggies was later determined to be methamphetamine.

**{5}**　After the transaction took place, Defendant drove away from the parking lot. Defendant was followed by other undercover officers who were part of the operation until a fully marked patrol unit was able to initiate a traffic stop. Once the traffic stop was executed, Defendant exited the vehicle and was arrested. The detectives on scene began an inventory search of the car, but the search was stopped when detectives were notified that the vehicle would be sealed in order for officers to obtain a search warrant. Once the search warrant was issued, Detectives searched the car and located the "buy money."

**{6}**　A grand jury indicted Defendant and Codefendant. Before the jury trial began, Codefendant absconded from the court's jurisdiction and could not be located to serve as a witness during Defendant's trial. A jury found Defendant guilty of trafficking a controlled substance by distribution, and conspiracy to commit trafficking a controlled substance by distribution. Defendant appeals. [3]

## DISCUSSION

### I.　The Search of Defendant's Car Was a Valid Inventory Search

**{7}**　Defendant makes two arguments that stem from one of his motions to suppress. We interpret Defendant's arguments to be as follows: (1) that the preliminary inventory search upon Defendant's arrest was illegal, and (2) that the next search was improper and illegal because of technical errors in the search warrant.

---

[3]We find it necessary to specifically identify some of the many errors in defense counsel's briefing. These include numerous grammatical errors, failure to follow Rule 23-112 NMRA for proper citation formatting, failure to provide pinpoint citations for cited authority, a table of authorities that fails to accurately reflect the page numbers where authorities may be located, failure to include authority or appropriate authority in support of legal assertions, failure to include a standard of review on most issues, failure to cite to the record proper for factual assertions, failure to point to the district court's findings, conclusions, or orders that are subject to appeal, and failure to comply with brief formatting requirements. Additionally, Defendant's brief in chief extends well beyond the page limitation imposed by Rule 12-318(F)(2) NMRA. Though we are not required, we nevertheless consider the arguments set forth by Defendant past the applicable page limit, but remind Defendant and counsel that "in light of the rules regarding page limits and the requirements for briefing, we encourage litigants to consider carefully whether the number of issues they intend to appeal will negatively impact the efficacy with which each of those issues can be presented." *Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶¶ 54-55, 144 N.M. 636, 190 P.3d 1131.

**{8}** "A motion to suppress evidence is a mixed question of law and fact." *State v. Garcia*, 2005-NMSC-017, ¶ 27, 138 N.M. 1, 116 P.3d 72. "We review the factual analysis for substantial evidence and review the legal analysis de novo." *State v. Davis*, 2018-NMSC-001, ¶ 10, 408 P.3d 576. "The appellate court must defer to the district court with respect to findings of historical fact so long as they are supported by substantial evidence." *Id*. "Substantial evidence is that which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Sanchez*, 2001-NMCA-109, ¶ 14, 131 N.M. 355, 36 P.3d 446.

**{9}** Defendant first argues that an illegal search occurred when Detective Daniel Lopez looked into his car at the time of the traffic stop and arrest. As grounds, Defendant states that because there was no search warrant in place and because there were no exigent circumstances, the search was illegal. Conversely, the State asserts that Detective Lopez was conducting a preliminary inventory search. We agree with the State that the preliminary look into the car by Detective Lopez was a valid inventory search.

**{10}** Defendant's reliance on the exigent circumstances doctrine is misplaced. "Exigent circumstances are defined as an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *State v. Bomboy*, 2008-NMSC-029, ¶ 13, 144 N.M. 151, 184 P.3d 1045 (internal quotation marks and citation omitted). The facts of this case are not those of a search incident to exigent circumstances. Instead, the search falls under "a well-defined exception to the warrant requirement" as an inventory search. *State v. Davis*, 2018-NMSC-001, ¶ 11, 408 P.3d 576 (internal quotation marks and citation omitted). "Like all warrantless searches, . . . inventory searches are presumed to be unreasonable and the burden of establishing their validity is on the [s]tate." *Id.* (internal quotation marks and citation omitted).

**{11}** An inventory search is valid if "the police have control or custody of the object of the search; . . . the inventory is made pursuant to established police regulations; and . . . the search is reasonable." *State v. Boswell*, 1991-NMSC-004, ¶ 7, 111 N.M. 240, 804 P.2d 1059. "Police may perform inventory searches of those objects over which they have *lawful* control or custody." *Davis*, 2018-NMSC-001, ¶ 15.

**{12}** In this case, Detective Lopez testified to the following facts: (1) Defendant was placed under arrest for trafficking narcotics; (2) according to APD policy, if a driver is arrested, the vehicle is not left unattended, but rather towed away from the scene; (3) Detective Lopez's role at the scene when Defendant was arrested was to conduct an inventory search of the car before it was towed; (4) when an inventory search is conducted, officers list items that are potential hazards including weapons, chemicals, illegal contraband, and items of value on the tow-in sheet; (5) as Detective Lopez opened the driver's side door and searched the driver's side area, he saw crumpled up currency; and (6) he then received information that the vehicle would be sealed in order for officers to obtain a search warrant, and halted his inventory search. The district court concluded that the crumpled up currency was discovered as part of a legal inventory

search, and therefore denied Defendant's motion to suppress the evidence. In light of the testimony outlined above, we hold that the State presented sufficient evidence to meet the elements for an inventory search and we see no basis to reverse the district court's conclusion on this issue.

**{13}** Defendant's second contention is that there were technical violations in the affidavit for the warrant to search his vehicle and in the warrant itself that rendered the search unlawful.[4] We interpret Defendant's assertions to be two-fold: (1) that the search warrant affidavit was not sufficiently specific because it did not provide serial numbers and photographs of the Department's buy money; and (2) because there were technical defects in the warrant itself, including a lack of signatures and the search warrant being prepared on an outdated form, it was improperly executed.

**{14}** First, in regard to the lack of serial numbers or photographs of APD's "buy money," the district court, in its denial of Defendant's motion to suppress, stated that "Defendant was required, but failed, to demonstrate deliberate or reckless omissions" in the search warrant affidavit. The district court relied on *State v. Fernandez*, 1999-NMCA-128, ¶ 34, 128 N.M. 111, 990 P.2d 224, for the relevant analysis, which states as follows:

In sum, to suppress evidence based on alleged falsehoods and omissions in a search warrant affidavit, the defendant must show either deliberate falsehood, or reckless disregard for the truth, as to a material fact. A merely material misrepresentation or omission is insufficient. Deliberate and reckless disregard are each a step beyond intentional.

(internal quotation marks omitted). On appeal, Defendant does not point to any facts demonstrating deliberate falsehood or reckless disregard for the truth. Defendant merely alleges that "[t]he Detectives were on a guess mission and therefore deliberately failed to include the buy money serial numbers." This is not enough to show that if the additional information Defendant argues should have been included in the affidavit had been present, a reasonable judge's determination of probable cause would have been altered, as is necessary to sustain a claim on this basis. *See Fernandez*, 1999-NMCA-128, ¶ 31. Here, the affidavit for the search warrant sought permission to search for various items related to drug trafficking, including "[a]ny U.S. currency or other fruits of the crime directly associated in the trafficking of controlled substances." We are

---

4Defendant also argues that the search warrant violated the Fourth Amendment to the United States and New Mexico Constitutions, Fourteenth Amendment to the United States and New Mexico Constitutions, and Rule 5-211 NMRA, Rule 9-214 NMRA, and NMSA 1978, Section 38-1-1 (1966). We do not address Defendant's constitutional arguments. We first note that while the New Mexico Constitution has sections that are comparable to the Fourth and Fourteenth Amendments of the United States Constitution, Defendant did not cite to them or make specific arguments to those sections. Nevertheless, Defendant fails to articulate how the warrant violated his constitutional protections, and he does not provide a factual basis and analysis that we may use to review the alleged violations of the cited rules. We will not develop this argument on his behalf. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, [the appellate c]ourt would have to develop the arguments itself, effectively performing the parties' work for them.").

satisfied that the warrant was sufficiently particular to direct an executing officer to the items to be seized, despite the generic language used. *See State v. Patscheck*, 2000-NMCA-062, ¶ 9, 129 N.M. 296, 6 P.3d 498.

**{15}** Second, in regard to the alleged technical defects of the warrant, the district court found that Defendant was not able to show that he was "actually prejudiced by the use of the wrong form or the failure to identify the party who witnessed the search." The district court cited *State v. Malloy*, 2001-NMCA-067, ¶ 11, 131 N.M. 222, 34 P.3d 611, for the proposition that "technical violations" and not "fundamental violations" only require suppression if those defects prejudice the defendant. *Id.*

**{16}** Again, Defendant points to no facts, law, or arguments that we may review to conclude that the trial court erred. The district court is only required to suppress evidence due to technical violations in securing and executing a search warrant when "the defendant can show prejudice or if there was a deliberate disregard of the rule by the police." *Id*. Because Defendant has made nothing more than bare assertions, unsupported by any evidence of prejudice, we agree with the State that no such showing has been made in this case. We therefore hold that the district court did not err in denying Defendant's motion to suppress.

## II.     There is No Merit to Defendant's Challenges to the Grand Jury Indictment

**{17}** Defendant asserts there were four errors that occurred during the grand jury proceedings. The errors he asserts are (1) that the State failed to give the grand jury an instruction identifying the charges as to each defendant, (2) that the State referred to Defendant by the wrong first name when asking the grand jury whether anyone recognized the Defendant, (3) that the State failed to respond to Defendant's motion to quash the indictment, and (4) that Detective Rascon testified inconsistently, and that the State helped to correct his testimony. Defendant asserts that these errors amount to a violation of the structural protections of the grand jury proceedings and he was thus entitled to a dismissal of the indictment.

**{18}** The State contends that the second and fourth issues were not preserved. We agree with the State that the second issue was not preserved; therefore, we will not address it. *See State v. Ortiz*, 2009-NMCA-092, ¶ 32 146 N.M. 873, 215 P.3d 811; *see also Rojo*, 1999-NMSC-001, ¶ 44. As for the third issue, Defendant makes only a two-sentence claim that the State failed to respond to his motion to quash the indictment. However, based on our review of the record the State did respond to the motion. Indeed, there was a motion hearing at which issues one and four were argued by both parties and the district court denied Defendant's motion. Therefore, we will not review this issue further.

**{19}** The first issue is whether it was necessary for the State to give specific instructions to the grand jury that each defendant was to be considered separately. At a hearing on Defendant's motion to quash the indictment, the district court reviewed NMSA 1978, Section 31-6-11 (2003), regarding the law on grand juries, and found that

there was no showing of "demonstrable prejudice resulting from the acts or omissions of the prosecutor." The district court noted that Defendant's motion did not include any authority that dismissal was the appropriate remedy in this situation. Defendant does not cite to any authority to support his claim that the district court should have granted the motion, nor does he clearly point to an error by the district court. We conclude that Defendant has failed to adequately develop a clear argument, and therefore we will not review this issue further. *Ortiz*, 2009-NMCA-092, ¶ 32.

**{20}** We next address the fourth issue, which asserts that Detective Rascon testified inconsistently before the grand jury, and that the State aided him in his testimony and thereby violated "the [r]ules." The State counters that Defendant did not preserve this issue for appeal. While Defendant's motion to quash the indictment does not raise this specific issue, our own review of the district court's hearing on this motion indicates that Defendant did attempt to bring to the court's attention the inconsistencies in Detective Rascon's testimony made before the grand jury, and thus preserved the issue. *See State v. Granville*, 2006-NMCA-098, ¶ 16, 140 N.M. 345, 142 P.3d 933 (stating that the preservation rule is "satisfied [when] the opposing party had an opportunity to respond and because the trial court had an opportunity to rule on the issue").

**{21}** "Generally, courts have been most cautious in invalidating indictments for alleged grand jury misconduct of the prosecutor." *Buzbee v. Donnelly*, 1981-NMSC-097, ¶ 20, 96 N.M 692, 634 P.2d 1244. Defendant is required to demonstrate that he suffered "substantial prejudice," or "demonstrable prejudice," because of prosecutorial misconduct or basic unfairness that violates due process "before the province of the independent grand jury is invaded." *Id.* ¶ 63; *see State v. Lucero*, 1998-NMSC-044, ¶ 20, 126 N.M. 552, 972 P.2d 1143. "[A d]efendant must show [that] the conduct complained of infringed upon the independent judgment of the grand jurors and that the result would have been different had the conduct in question not occurred." *Lucero*, 1998-NMSC-044, ¶ 20 (internal quotation marks and citation omitted).

**{22}** We have characterized conduct that infringes upon the independent judgment of grand jurors as that involving "[p]erjury, deceit, or malicious overreaching[.]" *State v. Hewitt*, 1988-NMCA-053, ¶ 22, 108 N.M. 179, 769 P.2d 92. The conduct Defendant complains about here—the State correcting Detective Rascon's testimony—does not rise to such a level. In essence, Defendant complains that the State helped Detective Rascon clarify a statement he made during his testimony before the grand jury. The primary statement Defendant takes issue with is Detective Rascon's statement: "I gave [Codefendant] forty dollars . . . worth uh she uh . . .[,]" and the State's attempt to clarify Detective Rascon's statement, namely "[y]ou gave [Codefendant] forty dollars." Therefore, we decline to invalidate the indictment of the grand jury on this basis, particularly because Defendant has made a bare assertion and has not made a showing of demonstrable prejudice.

## III. The Statements by the Codefendant Were Non-Testimonial

**{23}** Defendant asserts that the statements of Codefendant captured on an audio recording during the conversation she had with Detective Rascon at the 7-Eleven before he arrived should have been suppressed.[5] Defendant raises Confrontation Clause issues, asserting that Codefendant's statements captured on the recording were testimonial.[6] The State counters that the audio tape was properly admitted and that the statements were non-testimonial. Defendant also takes issue with the fact that he was only able to review a redacted copy of the audio recording.

**{24}** "Whether the [district] court violated [a d]efendant's Sixth Amendment right to confrontation by admitting the statements of his [non-testifying] codefendant[], presents a question of law, which we review de novo." *State v. Walters*, 2007-NMSC-050, ¶ 20, 142 N.M. 644, 168 P.3d 1068. "The Confrontation Clause of the Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " *State v. Lopez*, 2007-NMSC-037, ¶ 19, 142 N.M. 138, 164 P.3d 19 (quoting U.S. Const. amend. VI). "The Confrontation Clause bars the admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)). While there is not a comprehensive definition of "testimonial," the term applies to some, but not all, questioning by the police. The distinction between non-testimonial questioning and testimonial questioning turns on the purpose of the questions. *State v. Gutierrez*, 2011-NMCA-088, ¶ 14, 150 N.M. 505, 263 P.3d 282. The formality of the questioning is also relevant. *Id.* "[S]tatements made by co-defendants during a police interrogation [are] 'testimonial' when the questioning by officers constitute[s] an attempt to prove past events potentially relevant to later criminal prosecution." *Telles*, 2011-NMCA-083, ¶ 17 (internal quotation marks and citation omitted).

**{25}** Our inquiry, then, is whether Detective Rascon's conversation with Codefendant at the 7-Eleven was the type of questioning by police which elicits testimonial statements for purposes of the Confrontation Clause. The district court, after reviewing the unredacted audio recording of the conversation between Codefendant and Detective Rascon, found that "most of the talking was being done by the [C]odefendant," that "[t]here was very little questioning by law enforcement[,]" and that "[i]t seemed like a pretty casual conversation." The court went on to determine that "[t]here was no question about the identity of the individual who would be selling the drugs[,]" and that "[t]he sole purpose for the conversations seemed to be to advance the conspiracy[.]" For these reasons, the district court concluded that the statements by Codefendant were non-testimonial.

---

5We note that while Defendant and Codefendant were indicted together, Codefendant absconded from the district court's jurisdiction and she was never arraigned. As a result, there was never a severance of the two individuals' cases.

6We only address whether the admission of statements violated the Confrontation Clause, as Defendant does not argue that the statements were inadmissible under the rules of evidence. *State v. Telles*, 2011-NMCA-083, ¶ 14, 150 N.M. 465, 261 P.3d 1097. "[T]he hearsay rule and the Confrontation Clause are not coextensive and must remain distinct." *Id.*

**{26}** In *Telles*, this Court pointed to a case from the Supreme Court of the United States for the proposition that " 'statements made unwittingly to a government informant' and 'statements from one prisoner to another' were clearly non-testimonial." *Id.* ¶ 20 (quoting *Davis v. Washington*, 547 U.S. 813, 825 (2006) (alteration omitted)). *Telles* also cited to authority from the United States Court of Appeals for the Tenth Circuit which held that, even when a defendant unknowingly made statements to an undercover informant acting as a fellow prisoner, there is no interrogation when an accomplice spoke freely with an informant. *Id.* (citing *United States v. Smalls*, 605 F.3d 765, 768, 778 (10th Cir. 2010)). Where a defendant and a codefendant, or a defendant and a confidential informant, "talk[] freely with one another without police questioning, . . . statements [made are] non-testimonial for Confrontation Clause purposes." *Id.* ¶ 20.

**{27}** Thus, we conclude that the statements made by Codefendant to Detective Rascon were non-testimonial. The statements at issue here were not part of an interrogation for the purpose of investigating past events, for the purpose of prosecution, and they were made while talking freely. Further, the statements made by Codefendant were for the purpose of assisting the detective—unbeknownst to Codefendant—to set up the purchase of drugs. Detective Rascon testified about the conversation he had with Codefendant leading up to the actual exchange of drugs between her and Defendant. We conclude that Codefendant's statements were non-testimonial and thus did not violate Defendant's rights under the Confrontation Clause.

## IV.    The Photograph of the Buy Money Does Not Violate the Best Evidence Rule

**{28}** Defendant argues that the district court erred by admitting a photocopy of a photograph of the buy money into evidence. He argues that the photocopy is secondary evidence that violates the best evidence rule and that no exception to the best evidence rule was shown to permit its use. Defendant asserts that "the entire case . . . should be suppressed."[7] The State counters that Defendant did not make a showing of prejudice and that the district court did not abuse its discretion in admitting the photocopy.

**{29}** "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. An abuse of discretion occurs when a ruling is against logic and is "clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{30}** The best evidence rule requires that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a statute provides otherwise." Rule 11-1002 NMRA. There are at least two exceptions that may apply in this case: (1) if the originals were "lost or destroyed, and not by the proponents acting in bad faith," Rule 11-1004(A) NMRA; and (2) the duplicates were "admissible to

_____

7In a single sentence, in the middle of his photocopy argument, Defendant also seemingly argues that the original "buy money" should have been put forth under the best evidence rule as well, since it was not properly authenticated. Again, this issue was not preserved and we will not "review an undeveloped and unclear argument on appeal." *Ortiz*, 2009-NMCA-092, ¶ 32.

the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Rule 11-1003 NMRA. A photograph—at issue here—"means a photographic image or its equivalent stored in any form[,]" and "[a]n original of a photograph includes the negative or a print from" the photograph. Rule 11-1001(C), (D) NMRA.

**{31}**   A review of the trial transcript in this case indicates the following: (1) a photograph was taken of the buy money before the operation; (2) the disc containing the photograph was then tagged into evidence; (3) after the photograph was tagged into evidence Detective Rascon retrieved it for trial; (4) during trial Detective Rascon produced a photograph of the two $20 bills inside of a plastic bag that had an evidence tag with the Detective's initials on it; (5) Detective Rascon testified that the photograph that was in the bag was in the same condition as when it was originally tagged into evidence; and (6) the State moved to admit the photograph an as exhibit. Defendant objected to the exhibit under the best evidence rule asserting that it was only a photocopy and not the photograph itself, noting that Detective Rascon referred to it as a photocopy. Our review of the transcript does not indicate Detective Rascon referred to the exhibit as a photocopy of a photograph. Detective Rascon reiterated in his testimony that the exhibit was the photograph he took before the money was used. The district court admitted the photograph over Defendant's objection.

**{32}**   Based on our own search of the record and a review of Defendant's objection to the exhibit during trial, we cannot conclude that the district court abused its discretion in admitting the photograph over Defendant's objection. The district court could have found that the photograph, as tagged into evidence and submitted as an exhibit could qualify as an original under Rule 11-1001(D).

## V.     There Was Sufficient Evidence to Find Defendant Guilty of Conspiracy

**{33}**   Defendant asserts the State failed to prove any conspiracy was created by the actions of Defendant and Codefendant. Defendant contends that the transaction the detectives witnessed between Codefendant and him was not actual evidence that a drug transaction transpired in furtherance of the crime of trafficking methamphetamine. The State counters that there was sufficient evidence to sustain Defendant's conviction for conspiracy. We agree with the State.

**{34}**   "We review the evidence introduced at trial to determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "So long as a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a

jury's conclusions." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (emphasis, internal quotation marks, and citation omitted).

**{35}** "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. Thus, to convict Defendant of conspiracy to commit trafficking of a controlled substance, the jury had to find, in relevant part, that

> 1.       [D]efendant and another person by words or acts agreed together to commit Trafficking a Controlled Substance by Distribution;
>
> 2.       [D]efendant and the other person intended to commit Trafficking a Controlled Substance by Distribution[.]

*See* UJI 14-2810 NMRA.

**{36}** "Conspiracy consists of knowingly combining with another for the purpose of committing a felony within or without this state." *State v. Johnson*, 2004-NMSC-029, ¶ 49, 136 N.M. 348, 98 P.3d 998 (internal quotation marks and citation omitted). "An overt act is not required; the crime is complete when the felonious agreement is reached." *Id.* "Such an agreement need not be proven by direct evidence; the agreement may be in the form of a mutually implied understanding and may be inferred from circumstantial evidence." *Id.* Furthermore, "[i]ntent can rarely be proved directly and often is proved by circumstantial evidence." *State v. Durant*, 2000-NMCA-066, ¶ 15, 129 N.M. 345, 7 P.3d 495.

**{37}** During trial, the State's case was supported by the following testimony: (1) Detective Rascon, who was the undercover detective on scene, testified that he had contact with Codefendant while at the 7-Eleven convenience store and asked her if he could purchase any "shards"; (2) Detective Rascon testified that he handed Codefendant $40 of APD's operational funds also known as "buy money"; (3) Detective Rascon testified that after he gave Codefendant the buy money, she used her cell phone and sent a couple of text messages, and that after she sent the text messages, they waited ten or fifteen minutes for her "connect"—or drug dealer—to arrive; (4) Detective Rascon testified that the car Codefendant told him would be arriving—a "white Camaro" with "rims"—arrived soon after and parked right in front of them; (5) Detectives Rascon and Hernandez testified that when the Camaro arrived Codefendant walked over to the driver's side window of the car, which was parked directly in front of them with only one occupant in the vehicle; (6) Detective Rascon and Detective Hernandez testified that they could clearly see the driver give Codefendant something in exchange for the "buy money" from their respective locations; (7) Detective Rascon testified that Codefendant then took a few steps back to him and gave him two clear plastic bags that contained a clear crystal-shaped substance; (8) the substance in the bags was later determined to be methamphetamine; and (9) Detective Rascon testified that later when a search warrant was obtained for the white Camaro, he and other detectives discovered their "buy money" in the car.

**{38}** This evidence was sufficient to meet the elements required by the jury instructions. "We will not invade the jury's province as fact-finder by second-guessing [its] decision concerning the credibility of witnesses, reweighing the evidence, or [otherwise] substituting our judgment for that of the jury." *See State v. Cabezuela*, 2015-NMSC-016, ¶ 23, 350 P.3d 1145 (alterations, internal quotation marks, and citation omitted). A jury could reasonably infer that Defendant was the individual who had communicated with Codefendant with respect to facilitating the methamphetamine transaction.

## VI.  Defendant Does Not Present a Viable Ineffective Assistance of Counsel Claim

**{39}** Defendant raises multiple claims related to his "self-representation" which we interpret, generally, as an ineffective assistance of counsel claim. Specifically he contends that (1) all of his motions made pretrial were not heard, though he does not state specifically which motions were not heard or how this is attributed to counsel; (2) that he was not present for "other motion hearings," though he does not state which motion hearings he was absent for; (3) that he was not given sufficient time to present his arguments, without specifying how or why he was not given sufficient time; (4) that he "was not effectively represented and had to appear in court and file the motions pro se to preserve the legal issue in his case"; and (5) that because he was acting pro se, he was not able to make necessary legal arguments to preserve issues for appeal.

**{40}** As we note throughout, Defendant does not provide clear explanations, fully developed arguments, or record proper citations to support his allegations that counsel's performance was deficient or prejudiced him. He also does not indicate how claims one through three—listed above—are attributed to counsel's ineffectiveness. We decline to review or consider Defendant's ineffective assistance of counsel arguments when they are unsupported or not sufficiently developed for review or proper consideration. *See State v. Allen*, 2014-NMCA-047, ¶ 18, 323 P.3d 925 (declining to review an undeveloped ineffective assistance).

**{41}** We briefly address Defendant's contention is that because he was pro se, and unable to make necessary legal arguments, he had ineffective assistance of counsel. Defendant was cautioned of the potential consequences of self-representation by the district court and acknowledged this when he signed a waiver of counsel form. *See State v. Reyes*, 2005-NMCA-080, ¶ 7, 137 N.M. 727, 114 P.3d 407 (stating that "in a case where a defendant wishes to represent himself, the [district] court must determine if [the defendant] is making a knowing and intelligent waiver of counsel and fully understands the potential pitfalls of self-representation." Defendant nevertheless chose to represent himself and he is now precluded from complaining about this on appeal. *See id.* ¶ 10 (recognizing that a pro se defendant is precluded from complaining on appeal that ineffective self-representation amounts to a denial of effective assistance of counsel). It is a well-established principle of law that pro se litigants are held to the same standards as attorneys. *See Bruce v. Lester*, 1999-NMCA-051, ¶ 4, 127 N.M. 301, 980 P.2d 84 (stating that "a pro se litigant is not entitled to special privileges

because of his pro se status" and that a pro se litigant "who has chosen to represent himself[] must comply with the rules and orders of the court, and will not be entitled to greater rights than those litigants who employ counsel"). Therefore, we reject Defendant's ineffective assistance of counsel claim. We note that Defendant is not precluded from pursuing a similar claim in a collateral proceeding.

**CONCLUSION**

**{42}** We affirm Defendant's convictions for trafficking a controlled substance by distribution, and conspiracy to commit trafficking a controlled substance by distribution.

**{43}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JANE B. YOHALEM, Judge**